USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/23/2017___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

MARILYN WIEDERSPAN, individually and as :
representative of the estate of her father, Jose Velasquez :
Fernandez, JOSE VELASQUEZ FERNANDEZ, :
MARTHA VELASQUEZ SANCHEZ, individually, and :       15-CV-1983 (VEC)
MARIA BRAVO DIAZ, individually, :
: OPINION AND ORDER
                                        Plaintiffs, :
:
                    -against- :
:
THE REPUBLIC OF CUBA, et al., :
                                        Defendants. :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Foreign sovereigns may not be hauled into courts of the United States unless an exception

to sovereign immunity applies.  Plaintiffs seek to domesticate a Florida judgment against the

Republic of Cuba and its most senior officers for the wrongful death of their relative.  The

decedent was a first lieutenant in the Cuban army; he was killed in the aftermath of the Cuban

revolution in 1959.  The Defendants never appeared, and the state court entered a default

judgment against them.  The question before the Court is whether the terrorism exception

contained in the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605A, waives

Defendants' immunity from suit, and, if it does not, whether the Florida court's judgment is

nonetheless *res judicata* on the issue.  For the reasons discussed below, the Court answers both

questions in the negative.  The FSIA is not *carte blanche* to sue foreign sovereigns – Congress

carved out a narrow exception to immunity for plaintiffs with a connection to the United States

who have claims against state sponsors of terror.  It does not authorize Plaintiffs to recover on

behalf of a Cuban national with only post-mortem links to the United States who died decades

before Cuba was designated as a state sponsor of terror.

## BACKGROUND

Plaintiffs filed an action in Florida state court to recover for the death of Jose Velasquez Fernandez ("Velasquez").  Velasquez was the father of plaintiff Marilyn Wiederspan, and the brother of plaintiff Martha Velasquez Sanchez.  The defendants were the Republic of Cuba and its highest officials, including the president of the Republic of Cuba, Raul Castro, and Cuba's former president – now deceased – Fidel Castro.  Defendants never appeared and default judgment was entered in favor of Plaintiffs.  Dkt. 36 ("Pls.' Mot.") Ex 1 ("Fla. Judgment") at 18.  As amended, the judgment includes findings of fact and conclusions of law submitted by Plaintiffs and entered by the Florida court on January 12, 2012.  Dkt. 49 ("Second Supp. Mem.") Ex. 1 ("Am. Fla. Judgment") at 1.  According to the findings of fact, Velasquez was a first lieutenant in the Cuban army at the time of the communist revolution led by Fidel and Raul Castro.  Fla. Judgment ¶¶ 9, 13.  Velasquez was detained by communist authorities after the Batista regime fell in January 1959.  Fla. Judgment ¶ 14.  Velasquez was held for 30 days, tortured, and then summarily executed.  Fla. Judgment ¶¶ 15-16.

Plaintiffs base jurisdiction over Defendants on a limited exception to sovereign immunity created by the Antiterrorism and Effective Death Penalty Act (the "Antiterrorism Act"), Pub. L. 104-132, Title II, § 221(a), 110 Stat. 1241 (currently codified at 28 U.S.C. § 1605A(a)).  The Antiterrorism Act amended the FSIA to waive sovereign immunity as against state sponsors of terror – which included Cuba until 2015 – for acts of torture and extrajudicial killing, aircraft sabotage, and hostage taking perpetrated or supported by agents of the state.  *See* 28 U.S.C. § 1605A(a)(1).[1]  Subject to an exception not relevant here, FSIA actions are subject to a ten-year

---

[1]   In full, and as amended, the FSIA waives immunity as to "money damages . . . sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support

statute of limitations, running from April 24, 1996 or "10 years after the date on which the cause of action arose," whichever is later. *Id.* at § 1605A(b). Sovereign immunity is jurisdictional and the FSIA requires courts independently to scrutinize whether the requirements for waiver of sovereign immunity are satisfied. *See id.* at § 1608(e) ("No judgment by default shall be entered . . . against a foreign state . . . , unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."). Nonetheless, the Florida court "accept[ed] and credit[ed] the uncontested evidence and testimony submitted by Plaintiff[s]" that the FSIA applied. Fla. Judgment at 11.[2] The Florida court awarded Plaintiffs over $63 million in damages for Velasquez's wrongful death, loss of wages, and Plaintiffs' emotional distress. Fla. Judgment at 18.

Plaintiffs brought their judgment to this court. By this litigation, they seek to domesticate the Florida judgment for the first time so that they may recover against assets in the United States. The complaint was filed on March 17, 2015. Dkt. 1. Efforts to serve Defendants dragged on for more than a year through May 4, 2016. Dkt. 21. Defendants did not respond and

---

or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A(a)(1).

As relevant here, the FSIA also requires that "the foreign state was designated as a state sponsor of terrorism at the time the [predicate act] occurred, or was so designated as a result of such act" and that "the claimant or the victim was, at the time the [predicate act] occurred--

    (**I**) a national of the United States;
    (**II**) a member of the armed forces; or
    (**III**) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment;"

*Id.* at § 1605A(a)(2)(i)-(ii).

[2]    As far as the Court is aware, the Florida court did not hold a hearing in order to consider whether the requirements of Section 1605A were satisfied in this case. *See Roeder v. Islamic Repub. of Iran*, 195 F. Supp. 2d 140, 159 (D.D.C. 2002) (vacating judgment against foreign sovereign where court did not hold hearing to independently determine that sovereign immunity was properly waived); *see also Vera v. Repub. of Cuba*, 40 F. Supp. 3d 367, 376 (S.D.N.Y. 2014) (refusing to vacate judgment against foreign sovereign where state court held a trial and took evidence as to subject-matter jurisdiction).

3

the Clerk of the Court entered a certificate of default on August 12, 2016.  Dkt. 24.  Plaintiffs

filed their motion for default judgment on September 22, 2016.  Dkt. 30.  The Court *sua sponte*

directed Plaintiffs to file additional information relative to subject matter jurisdiction in this

proceeding.  Dkt. 44.  Specifically, the Court directed Plaintiffs to "explain the basis for their

assertion that the Defendants have waived sovereign immunity [pursuant to] the Foreign

Sovereign Immunities Act," Dkt. 44 at 1, and the basis for finding this action timely, Dkt. 44 at

2.

Plaintiffs contend that subject-matter jurisdiction is proper because the decedent,

Velasquez, was an "employee" of the Cuban government, which was in turn "an individual

performing a contract awarded by the United States Government."[3]  28 U.S.C. §

1605A(a)(2)(ii)(III); *see also* Dkt. 47 ("Supp. Mem.") at 1-3.  While Plaintiffs concede that Cuba

was not designated as a state sponsor of terror until 1982, decades after Velasquez's death, they

argue that Cuba was designated as such, at least in part, because of the torture and extra-judicial

killing of Batista loyalists during the 1959 revolution.  Supp. Mem. at 3.  Alternatively, Plaintiffs

argue that the Florida court's findings are *res judicata*, and that this Court must accept as true the

Florida court's finding that the requirements of the FSIA are satisfied.  Second Supp. Mem. at 2.

Plaintiffs concede that their action was time-barred, but contend that the statute of limitations is

not jurisdictional and cannot be raised by the Court *sua sponte*.  Supp. Mem. at 4-5.

## DISCUSSION

The preclusive effect of a state court judgment in federal court is determined by the Full

Faith and Credit Act, 28 U.S.C. § 1738.  The Full Faith and Credit Act requires federal courts to

give state court judgments "the same full faith and credit in every court within the United States

---

[3]      None of the Plaintiffs or the decedent was a U.S. national or a member of the armed forces at the time of
Velasquez's death.

and its Territories and Possessions as they have by law or usage in the courts of such State . . .

from which they are taken." *Id.*  A two-step analysis applies: first, the court must determine

"whether, under federal law, the judgment is entitled to full faith and credit;" and, second, "what

preclusive effect would the judgment be given under the law of the rendering state." *Conopco,*

*Inc. v. Roll Int'l*, 231 F.3d 82, 90 n.7 (2d Cir. 2000).[4]  Under the first step, the Court must

determine whether the "court in the first State had power to pass on the merits – had jurisdiction,

that is, to render the judgment." *Underwriters Nat'l Assur. Co. v. N.C. Life & Acc. & Health Ins.*

*Guar. Ass'n*, 455 U.S. 691, 704 (1982) (quoting *Durfee v. Duke*, 375 U.S. 106, 110 (1963)).  "If

[the State court] did not have jurisdiction over the subject-matter or the relevant parties, full faith

and credit need not be given." *Id.* at 705.  The second step in the analysis requires the Court to

apply the law of the rendering state – here Florida – to determine the preclusive effect of the

judgment. *See Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992).

Plaintiffs contend that this Court is precluded by principles of *res judicata* from

considering the Florida court's subject-matter jurisdiction. *See* Second Supp. Mem. at 2.  The

Supreme Court has "long recognized that 'the principles of *res judicata* apply to questions of

jurisdiction . . . .'" *Underwriters Nat. Assur. Co.,* 455 U.S. at 706 (quoting *Am. Surety Co. v.*

*Baldwin*, 287 U.S. 156, 166 (1932)).  Due process is not offended when a party that has had an

opportunity to litigate jurisdiction is subsequently bound to a judgment. *Id.*  Thus, absent a

"clear usurpation of power" that would be grounds to set aside a judgment pursuant to Rule

60(b)(4), subsequent courts are ordinarily bound by a previous tribunal's jurisdictional findings.

*See Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986); *Weininger v. Castro*, 462 F. Supp. 2d at

---

[4]       Courts have varied the order of these elements in the past. *See Weininger v. Castro*, 462 F. Supp. 2d 457,
472 (S.D.N.Y. 2006) (describing state law inquiry as first step in the full faith and credit analysis).  The difference is
not substantive.

475 (declining to exercise discretion to reconsider subject-matter jurisdiction where the State court did not plainly usurp jurisdiction).

Default judgments stand on different ground.  It is not always clear that a defaulting party has had an opportunity to litigate jurisdiction; in part, this is why default judgments are traditionally disfavored.  *Weininger*, 462 F. Supp. 2d at 472-73.  Thus a defaulting party may choose not to appear and collaterally attack jurisdiction in a subsequent proceeding to enforce – or domesticate – a judgment.  "A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding."  *Ins. Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982).  As the D.C. Circuit held recently in another case involving a Florida default judgment against Cuba, this rule applies to subject-matter jurisdiction as well as personal jurisdiction.  *See Jerez v. Repub. of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014).  The *Jerez* court explained that an "opportunity" to litigate subject matter jurisdiction requires the defendant to appear in the first instance.  *Id.*  The Eleventh and Third Circuits have reached the same conclusion.  *See Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros*, 441 F. App'x 822, 825 (3d Cir. 2011) (distinguishing default judgments from fully-litigated judgments subject to collateral attack only on a showing of a "clear usurpation of authority"); *Am. Steel Bldg. Co. v. Davidson & Richardson Constr. Co.*, 847 F.2d 1519, 1521 (11th Cir. 1988) (default judgment subject to collateral attack for lack of jurisdiction); *see also* Restatement (Second) of Judgments § 65 cmt. b (1982) (same).  There are especially good reasons to consider subject-matter jurisdiction under the circumstances here, involving a foreign sovereign that would otherwise be immune from suit. Traditional notions of comity and concern that a judgment will negatively impact the nation's foreign affairs require the courts to scrutinize closely efforts to invoke jurisdiction over a foreign

sovereign.  *See First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda – Permanent Mission*, 877 F.2d 189, 196 (2d Cir. 1989) ("[D]efault judgments are disfavored, especially those against foreign sovereigns.  Courts go to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside." (internal citations omitted)).[5]

Having concluded that the Florida court's jurisdictional findings are not *res judicata*, the Court must examine the underlying Florida judgment and supporting findings of fact and conclusions of law to determine whether the requirements for waiver of sovereign immunity under Section 1605A were satisfied in this case.  *See Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) ("the sole basis for obtaining jurisdiction over a foreign state in the courts of this country" is waiver under the FSIA).  Two elements of waiver are plainly absent in this case:  first, there is no basis to conclude that Congress designated Cuba as a state sponsor of terror in 1982 "as a result of" Velasquez's murder in 1959, and second, none of the Plaintiffs, including Velasquez, is a proper party.  *See* 28 U.S.C. § 1605A(a)(2).

Section 1605A waives sovereign immunity only as to terroristic acts committed after a sovereign was designated as a state sponsor of terror or that were the cause for the designation. *See* 28 U.S.C. § 1605A(a)(2) (sovereign immunity waived if "foreign state was designated as a state sponsor of terrorism at the time the [predicate act] occurred, or was so designated as a result of such act").  Subsection 1605A(a)(2) limits what might otherwise be a free-ranging intrusion on foreign sovereignty for acts taking place decades prior to the Antiterrorism Act's enactment. The basis for Cuba's designation as a state sponsor of terror are well known and uncontroversial.

---

[5]        Recently, our sister court in the Northern District of New York has applied this rule and refused to recognize a Florida court default judgment against Cuba on very similar facts.  *See Martinez v. Repub. of Cuba*, No. 14-CV-856 (LEK), 2016 WL 6839451, at *3-4 (N.D.N.Y. Nov. 21, 2016).  Even were the Court to apply the more rigorous "plain usurpation" analysis, *see Weininger*, 462 F. Supp. 2d at 475, the Florida judgment could not stand. Subject matter jurisdiction is so glaringly absent in this proceeding that the Court finds that the judgment is void under either standard.

The State Department's 1982 bulletin designating Cuba as a state sponsor of terror identified "Cuban support for revolutionary violence and groups which use terrorism as a policy instrument" as the basis for its designation.  Ernest B. Johnston, Jr., *Foreign Policy Export Controls*, 82 Dep't of State Bull. No. 2063, at 56 (June 1982).  A contemporaneous State Department message to Congress stated that Cuba was designated because of its support for guerilla groups, including the Colombian group M-19.  *See Regulation Changes on Exports: Hearing before the Subcomm. on Near E. and S. Asian Affairs of the S. Comm. on Foreign Relations*, 97th Cong. 7-14 (1982) (statement of Ernest B. Johnston, Jr., Deputy Assistant Secretary for Economic Affairs, Department of State).

Velasquez's demise – more than 20 years before Cuba was designated as a state sponsor of terror and as part of the revolution that brought Castro to power – has no connection to those events, and the Florida court identified none.  The Court made no express finding that Cuba was designated as a state sponsor of terror in part because of extra-judicial killings during the Cuban revolution.  Rather, the Court concluded that Velasquez was killed by members of the Castro regime itself.  *See* Fla. Judgment ¶¶ 16, 20 ("The unit with principal responsibility for carrying out extrajudicial killings in 1959 was directly supervised and administered by Fidel Castro, Raul Castro and Che Guevara.").  According to the Florida Court, Velasquez was killed "[d]ue to his valiant efforts against the [Castros'] guerilla insurgency."  Fla. Judgment ¶ 14.  Nor did the Court identify any connection between the Cuban regime's links to other state sponsors of terror and terrorist groups and the events of the 1959 revolution and Velasquez's murder.  Fla. Judgment ¶¶ 29-36.

The Florida judgment also lacks a proper plaintiff.  The Antiterrorism Act waives sovereign immunity only to the extent that:

"the claimant or the victim was, *at the time the [predicate act] occurred--*

> (**I**) a national of the United States;
> (**II**) a member of the armed forces; or
> (**III**) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment;"

*Id.* at § 1605A(a)(2) (emphasis supplied).  The Florida court's findings of fact and conclusions of law do not address this element of waiver under the FSIA and Plaintiffs' submissions to the Florida court did not provide a basis for that court to have implicitly concluded that the Plaintiffs were proper parties.  An accompanying affidavit submitted by plaintiff Marta Velasquez Sanchez does not specify where Velasquez was born, but he appears to have been a Cuban national.  Pls.' Mot. Ex. C ("Sanchez Decl.") at 2.  None of the Plaintiffs was a national of the United States at the time of Velasquez's death.  *See* Sanchez Decl. at 2; Pls.' Mot. Ex. D. ("Wiederspan Decl.") ¶¶ 2, 4.

Perhaps recognizing this error, Plaintiffs sought an amended judgment in 2015.  Their motion to amend the judgment asserts that Velasquez was an "employee . . . of an individual performing a contract awarded by the United States Government" because he was a member of the Batista regime's armed forces and may have received training and other assistance from representatives of the United States Government.  *See* Second Supp. Mem. Ex. 1 ("Pls.' Mot. to Am. Judgment") ¶ 16.

This argument is unavailing for two reasons.  First, the amended Florida judgment did not adopt Plaintiffs' revised jurisdictional theory.  The amended judgment incorporates the "findings and conclusions of law, filed January 12, 2012, which were inadvertently not made part of or attached to the final judgment."  Am. Fla. Judgment at 2.  This was not an oversight.  The Florida court lined out Plaintiffs' proposed conclusion that the amended judgment incorporate "all of the

9

changes set forth in the Motion."  Am. Fla. Judgment at 2.  Second, and more fundamentally,

Plaintiffs' theory relies on an untenable reading of the FSIA that would dramatically expand the

scope of the statute's waiver.  Assuming that a government could be an "*individual*," as Section

1605A(a)(2) requires, Plaintiffs have not identified any transaction that would establish the

Batista government was a U.S. government contractor.  Allegations that the United States sold

weapons and provided training to the Batista government do not establish that the Batista regime

– the buyer and recipient of this assistance – is properly characterized as providing a good or

service to the government pursuant to contract.[6]  Accepting Plaintiffs' elastic construction of

subsection 1605A(a)(2), the FSIA would seem to permit employees of any allied government to

sue state sponsors of terror in U.S. courts.  For example, a member of the Iraqi armed forces

could sue the Iranian government, and a Kurdish irregular would be authorized to bring claims

against the Syrian regime.  Such a dramatic expansion of the FSIA is inconsistent with the

principle that "jurisdiction under the FSIA should be construed narrowly."  *Sampson v. Fed.

Repub. of Germany*, 250 F.3d 1145, 1155-56 (7th Cir. 2001).

     The patent flaws in the Florida judgment distinguish this case from *Weininger.*  In

*Weininger*, the district court assumed that it had authority to evaluate the subject-matter

jurisdiction of a default judgment, but declined to do so.  *Weininger*, 462 F. Supp. 2d at 473-74.

Judge Marrero relied on the fact that the state court had held a hearing and received evidence and

that the judgment had been previously recognized by numerous other federal courts.  *Id.*  On

those facts, the *Weininger* court exercised its discretion not to reconsider the state court's

jurisdiction.  *Id.*; *see also Vera*, 40 F. Supp. 3d at 376 (declining to reconsider jurisdiction where

Florida court held a trial, made facially valid findings, and the judgment had been recognized by

---

[6]    Plaintiffs have not cited to any case interpreting this particular provision of the FSIA, and the Court's
independent research has revealed none.

10

several other courts).  By contrast, Plaintiffs have not identified any court that has extended

recognition to the Florida judgment; Plaintiffs have not presented any evidence that the Florida

court held a hearing; and the Florida court's jurisdictional findings are plainly insufficient.

Under these circumstances, and in light of the careful scrutiny of waivers of sovereign immunity

that is required, the Court declines to recognize the Florida judgment.[7]

<b>CONCLUSION</b>

Plaintiffs' motion to domesticate the Florida judgment is DENIED.  The Clerk of the

Court is respectfully directed to close the open motions at docket entries 30, 33, and 47 and

terminate this case.

**SO ORDERED.**

Date:  **March 23, 2017**                              **VALERIE CAPRONI**
        **New York, New York**                         **United States District Judge**

---

[7]        Although the first step in the full faith and credit analysis disposes of this case, the Court would reach the
same conclusion under Florida law as well.  As the *Jerez* court explained, "Florida law, like federal law, calls for a
de novo examination of the Florida state court's jurisdiction."  *Jerez*, 775 F.3d at 423 (quoting *McGhee v. Biggs*,
974 So.2d 524, 526 (Fla. Dist. Ct. App. 2008) ("A judgment entered by a court which lacks subject-matter
jurisdiction is void and subject to collateral attack under [Florida] rule 1.540 at any time.")).